## LOUGHRAN v. CITY OF HICKORY.

(Filed December 3, 1901.)

1. ELECTIONS—*Towns and Cities—Acts 1901, Ch. 750, Sec 19—Acts (Private), 1901, Ch. 255.*

   Under Acts 1901, Ch. 750, Sec. 19, and Acts(Private), 1901, Ch. 255, the election for municipal officers and local option in the city of Hickory was properly held on the first Tuesday after the first Monday in May, 1901.

2. SERVICE OF PROCESS—*Summons—Parties—Acts 1889, Ch. 238.*

   The corporation of Hickory having been chartered under the name of "The City of Hickory," a summons is properly directed against the city of Hickory and served upon the Mayor and the Secretary of the Board of Aldermen.

3. MANDAMUS—*Spirituous Liquors—Licenses.*

   In an action for mandamus to compel the aldermen of a city to issue license to sell liquor, the court should direct the aldermen to pass upon the application and not order a peremptory mandamus directing the aldermen to issue license.

ACTION by Frank Loughran against the City of Hickory and the Mayor and the Aldermen, heard by Judge *W. B. Council,* at Chambers, at Newton, on the 8th day of July, 1901. From a judgment for the plaintiff, the defendants appealed.

*E. B. Cline,* and *S. J. Ervin,* for the plaintiff.
*Self & Whitener,* and *T. M. Hufham,* for the defendants.

Montgomery, J.   The Board of Aldermen, of Hickory, under Chapter 238, sec. 46, Private Laws of 1889, had exclusive control of the sale of spirituous liquors within the limits of the city, including the power to refuse to allow it to be sold.   The General Assembly, at its session of 1901 (Private Acts, Chap. 255), struck out section 46, of Chapter 238, of the Private Acts of 1889, and enacted in lieu thereof a section which provided that the question of whether license to sell liquor within the city limits should be granted or not should be decided by a direct vote of the qualified voters of the city, and that the Board of Aldermen, at each annual election for Mayor and Aldermen, should provide a separate box in which the voters might cast their ballots, "License" or "No License," as they might prefer; and if a majority should be in favor of license, then the Board of Aldermen should issue license to applicants who should comply with the requirements of the general law on that subject, but if a majority should be against license, then the Board should not issue any license during the following municipal year. At the same session of the General Assembly (Chapter 750, of the Public Laws), that body undertook to make uniform, as far as it could be done, the rules and regulations concerning elections in towns and cities and special elections in counties and townships, and declared that those rules and regulations should be complied with, except as otherwise provided in the charters of cities or towns (section 1).   In section 19 of the last-mentioned chapter, however, all town and city elections, except those in Fayetteville, thereafter to be held, were required to be held on Tuesday after the first Monday in May, 1901, and to be held bi-ennially, and any provision to the contrary in any charter in any city or town were expressly repealed.   So, by section 17 of Chapter 750, of the Laws of 1901, all town and city elections to be held after the ratification of the act were to be held on Tuesday after the

first Monday in May, and they were to be bi-ennially held; and so the city of Hickory understood the act (Chapter 750), and in accordance therewith, at the bi-ennial election for Mayor and Board of Aldermen, held on Tuesday after the first Monday in May, 1901 (instead of the first Monday in May and annually, as provided in its charter), a separate box was provided under the private act of 1901, to decide the question of whether liquor license should or should not be granted. The city polled its full vote, a usual occurrence on such issues in cities big and little, according to statement of counsel, 239 votes for license and 219 against. The plaintiff, after the election, made application to the Board of Aldermen for license to sell spirituous liquors at his hotel in the city for twelve months from 1st of July, 1901, furnishing at same time certificates by way of affidavits both that the applicant was a proper person to sell spirituous, vinuous and malt liquors, and that the building in which he proposed to sell was a suitable place for the purpose. The Board rejected the application upon the ground that the election upon which the application was based was invalid as to license. The plaintiff, therefore, commenced this action in mandamus, and prayed for judgment, first, that an order issue to the defendant and Board of Alderman commanding them to hear the application of the plaintiff and to grant license to him to sell spirituous liquors within the city of Hickory; second, for all such other and further relief as he may be entitled to herein; and, third, for cost of the action.

Upon the matter having been heard by his Honor, a judgment was rendered that the election was a valid one, and that the plaintiff was entitled to the license applied for, and that the defendants issue to him the license upon the payment of the license tax. The judgment recited that the application was rejected by the Board alone on the ground of the invalidity of the election, and it seems the order was issued peremp-

torily because the defendant made no contention over the matter of the fitness of the applicant or the suitableness of the place, and that no such contention was then made (at the time of the hearing).

As we have shown, the election for Mayor and Aldermen was regularly held (Acts 1901, Chap. 750, sec. 19), and we think that Chapter 255 of the Private Laws of 1901 must be construed together with Chapter 750 of the laws of the same session, and, that being so, we are of the opinion that the proper construction of the two acts is that on whatever day the election for Mayor and Aldermen should be held, on that day should also be held the election on license or no license, and that the result should be the rule of action of the Board until the next bi-ennial election; that is, if a majority of the qualified voters should vote in favor of the sale of liquor, then license should issue to applicants in conformity to the general law, or if a majority should vote in favor of "no license," then no license should issue until the next regular election for Mayor and Aldermen, and then only on a majority vote favoring the license system.

The defendant's motion to dismiss the action was properly refused. By the charter (amended), Chapter 238 of the Acts of 1889, the inhabitants of the city are incorporated under the name of "The City of Hickory," and not the Board of Aldermen, and therefore the summons was properly directed against "The City of Hickory." It was properly served, a copy having been left with the Mayor and one with the Secretary of the Board of Aldermen. The service on the members of the Board of Aldermen did no harm, and might have been of service in future orders of the Court. We are of the opinion, however, that the order for a peremptory mandamus was erroneous, and must be modified. We must assume that the action of the Board of Aldermen, in rejecting the petition on the ground alleged, was in good faith. We

must assume that they thought the apparently inconsistent statutes on the subject before them justified the course they pursued. We say we must assume this much. That being so, we can not say that they did not have the right to rest their refusal to grant license to the applicant on that ground —the invalidity of the election—without considering the matters embraced in the application. The fitness of the applicant and the suitableness of the place, and other matters which might possibly arise, are matters still in the sound legal discretion of the Board of Aldermen, and they are such matters as cannot be heard originally anywhere except before them sitting as a body, and as the representatives of the city and its inhabitants. They have never passed, as a Board, upon the fitness of the applicant or the suitableness of the place at which he wishes to sell liquor, and that is a discretion which we can not take from them. If the peremptory order granted by his Honor should be sustained, then bad faith would be indirectly charged upon the defendants in their conduct in this matter, and that, as we have seen, can not be done consistently with the respect which the Courts should entertain towards the governing bodies of municipal corporations—Courts within themselves.

The order must be modified so as to require and command the defendants to, at once, take up for consideration the application of the plaintiff and pass upon the same; and if it is found that the applicant is a proper person to sell spirituous liquors, and the place at which he wishes to sell is a suitable place, then to at once issue to him the license upon the payment of the license tax. There was no error otherwise.

Modified and Affirmed.